Gerald B. Singleton (SBN 208783)
Brody A. McBride (SBN 270852)
Trenton G. Lamere (SBN 272760)
SINGLETON LAW FIRM, APC
450 A Street, 5th Floor
San Diego, California 92101
Tel:      (619) 771-3473
Fax:      (619) 255-1515
Email:  gerald@SLFfirm.com
            brody@SLFfirm.com
            trenton@SLFfirm.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC-OLIVER LEWIS, an individual, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> UNKNOWN AGENTS OF THE <br> UNITED STATES DEPARTMENT OF <br> HOMELAND SECURITY, individuals, ) <br><br> Defendants. ) | Case No. **'19CV0600 CAB NLS** <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      Regardless of one's opinion of alcohol and drug addiction, the fact remains that suddenly stopping high doses of alcohol and/or heroin, without medical supervision and treatment, is a life-threatening experience that can result in detox and withdrawal symptoms tantamount to torture.

2.      Plaintiff Marc-Oliver Lewis—a U.S. citizen and Gulf War combat veteran—endured just such an experience from February 7 through 11, 2019, when Mr. Lewis was an arrestee and pretrial detainee in the custody, and under the supervision, of currently

COMPLAINT

unknown, individual agents for the U.S. Department of Homeland Security ("DHS") ("Defendants").

3. Even though Mr. Lewis repeatedly informed Defendants, shortly after his arrest near the San Ysidro Port of Entry, that he had been using high doses of alcohol and heroin, and even though Mr. Lewis began experiencing objectively severe symptoms of detox and withdrawal from alcohol and heroin, Defendants never provided Mr. Lewis with the medical care required to treat his serious medical needs while Mr. Lewis was in Defendants' custody.

4. This practice of DHS agents forcing arrestees and pretrial detainees to detox and withdraw from high amounts of alcohol and/or opiates in holding cells near the border, is now happening *with alarming frequency*. Indeed, Mr. Lewis is believed to be one of dozens of other individuals forced to endure these conditions in recent months.

5. Bureaucratic delays and funding deficiencies are, of course, no excuse for forcing human beings to endure *days* of life-threatening, torturous, and humiliating detox and withdrawal symptoms. If Defendants are unable to detain individuals they suspect of committing a crime in a way that does not violate the individual's constitutional rights, Defendants should release the individual and find another way to ensure the individual appears at pretrial proceedings (through, e.g., the use of a GPS monitoring device).

6. Mr. Lewis now sues for violation of his constitutional rights, pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1999), for recovery of damages.

## **JURISDICTION & VENUE**

7. Plaintiff asserts a single cause of action for violation of his civil rights under the United States Constitution pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1999). The Court thus has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. Plaintiff believes each of Defendants was domiciled in the State of California at the time of the events giving rise to this action. The Court thus has personal jurisdiction over each of Defendants in this action.

COMPLAINT                                                           1

9. The events giving rise to this action occurred in the County of San Diego, California, which is located within the Southern District of California. Thus, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## PARTIES

10. Plaintiff Marc-Oliver Lewis is an individual U.S. citizen who is currently an inmate in federal custody in San Diego, California.

11. Defendants are currently unknown agents of DHS [believed to be individuals working under color of authority of U.S. Customs and Border Protection ("CBP") and/or U.S. Customs and Immigration Enforcement ("ICE")]. Plaintiff will seek leave to amend his pleadings after Plaintiff is allowed to learn Defendants' true names through the discovery process.

## ADMINISTRATIVE EXHAUSTION

12. Despite a diligent search for a DHS, CBP, and/or ICE administrative grievance procedure, Plaintiff believes there are no such procedures available for purposes of the exhaustion requirement under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. That is, to the extent DHS, CBP, and/or ICE have an administrative remedy available to arrestees and pretrial detainees who are ultimately transferred to another department or agency's custody, such remedies are unobtainable and, therefore, "effectively unavailable" for purposes of the PLRA. Plaintiff has nonetheless submitted a grievance through CBP's website, which appeared to be the only means of requesting an administrative remedy for the harms alleged herein. There has been no substantive response to this submission that addresses the merits of Plaintiff's claims. As such, Plaintiff has exhausted all "available" remedies for purposes of satisfying the requirements of the PLRA.

## FACTS

13. On or about Thursday, February 7, 2019, at approximately 10:00 a.m., Mr. Lewis—a U.S. citizen and Gulf War combat veteran—was arrested at the San Ysidro Port of Entry. Defendants (believed to be individuals working under color of authority of DHS,

CBP, and/or ICE) placed Mr. Lewis in a holding cell in a DHS facility at the border.

14. At or near the time of his arrest, Mr. Lewis repeatedly advised Defendants that he had a history of using large amounts of alcohol and heroin. More specifically, Mr. Lewis informed Defendants he had been drinking up to a gallon of alcohol per day and using up to three grams of heroin per day. One Defendant laughed at Mr. Lewis and told him: "You'll be fine."

15. Within several hours of his arrest, Mr. Lewis started experiencing the beginning effects of alcohol and heroin withdrawal, including restlessness, headache, muscle aches and pains, increased tearing, runny nose, and sweating. In addition to these symptoms being obvious to anyone who spent any time with Mr. Lewis, Mr. Lewis also repeatedly stated to Defendants that he was experiencing these symptoms. Along with the withdrawal symptoms described herein, it is important to note that suddenly stopping high doses of alcohol can lead to seizures, strokes, heart attacks, hallucinations, delirium tremens, and death.

16. At approximately 3:00 p.m. on the afternoon of his arrest, Defendants transported Mr. Lewis to the Metropolitan Correction Center – San Diego ("MCC"). Given Mr. Lewis' obviously unstable medical condition, MCC officials rejected Mr. Lewis and recommended that he be taken to a hospital for immediate medical attention.

17. Rather than taking Mr. Lewis to a hospital, however, as recommended by MCC officials and as (presumably) required by DHS policies and procedures, DHS officials returned Mr. Lewis to a DHS holding facility at or near the San Ysidro Port of Entry. DHS officials placed Mr. Lewis in a holding cell that measured approximately twenty by fifteen feet, and which contained approximately twenty other detainees. There were no beds or bedding in the cell; rather, Plaintiff was given yoga mats and plastic blankets. There was one toilet and one sink in the room.

18. At this point, it had been more than twelve hours since Mr. Lewis had last used alcohol or heroin, and Mr. Lewis was starting to experience severe (i.e., clinically significant) detox and withdrawal symptoms, including: headaches, dizziness, difficulty

breathing, chest tightness, racing heart, palpitations, nausea, vomiting, diarrhea, stomach aches, muscle pain, joint and bone pain, anxiety, restlessness, fatigue, insomnia, and depression. At several points, Mr. Lewis feared he was going to have a heart attack.

19. The night of his arrest, Mr. Lewis was in so much pain (his arms, legs, and back had essentially "locked up"), that he was unable to get up off of the ground to drink water, which exacerbated his dehydration. Nor was Mr. Lewis able to make it to the toilet unassisted and, as a result, he was forced to defecate in his pants. (To make matters worse, Defendants then refused to provide Mr. Lewis with a change of clothes and the opportunity to shower, forcing him to remain in his soiled clothing until he was eventually accepted at MCC, *four days later*.)

20. Mr. Lewis remained in the holding cell through the following day, Friday, February 8, 2019. During that time, Mr. Lewis continued to advise Defendants of his medical condition and his need for immediate medical attention. And Defendants continued to ignore Mr. Lewis' pleas for help. Mr. Lewis was not seen by any doctor, nurse, or other medical provider during this time. Mr. Lewis was not provided any medical attention whatsoever to treat his severe and life-threatening detox and withdrawal symptoms.

21. On Saturday, February 9, 2019, Defendants told Mr. Lewis to "get up and eat." He was, however, unable to stand due to his intense detox and withdrawal symptoms. Defendants thus carried Mr. Lewis to a smaller, rubber-lined isolation cell. Mr. Lewis remained in this cell for approximately ten hours. During this time, Mr. Lewis' severe detox and withdrawal symptoms persisted and Mr. Lewis continued to plea for medical attention. This isolation cell did not include a toilet or sink, so Mr. Lewis was forced to vomit and defecate into a drain on the floor in the middle of the cell.

22. The following day, Sunday February 10, 2019, Mr. Lewis was transferred to another cell, which contained approximately four other prisoners. That afternoon, Mr. Lewis was finally seen by a non-physician medical provider, but this provider failed to treat the life-threatening components of detoxing from both alcohol and heroin.

COMPLAINT                                    4

23.    Finally, on Monday February 11, 2019, Defendants transported Mr. Lewis to MCC, where he still required two additional days of medical supervision and treatment.

24.    Mr. Lewis is believed to be one of dozens of individuals over the past several months whose serious medical needs have been deliberately ignored by DHS agents and who, in particular, were forced to undergo a life-threatening and torturous detox in temporary holding cells at the border because they were rejected by custodial officials (like those at MCC) on grounds of medical instability.

25.    It is believed this practice is in violation of DHS, CBP, and ICE policies and procedures, which require arrestees experiencing detox and withdrawal symptoms to be medically evaluated by a medical professional knowledgeable about addiction medicine; which establish protocols for the treatment of addiction to commonly used substances like alcohol, opiates, and amphetamines (each of which require a different medical approach); and which provide for the transfer of arrestees to medical facilities when their serious medical needs cannot be evaluated and treated in custody.

26.    This practice has already caused substantial physical and mental/emotional injury to multiple individuals, and, if it is not stopped, it is likely to result in the death of an arrestee forced to undergo the same experience as Mr. Lewis and others who have been forced to detox and withdraw at the border.

## CAUSE OF ACTION

### *Bivens* – Deliberate Indifference in Violation of 5th Amendment
### (Against Unknown Individual DHS Agents)

27.    The foregoing paragraphs are incorporated herein by this reference.

28.    From February 7 through 11, 2019, Plaintiff was in the custody, and under the supervision, of Defendants (who are individuals believed to be working under color of authority of DHS, CBP, and/or ICE).  Plaintiff was *not*, in other words, being detained during this time frame because he had been convicted of any crime.  He was an arrestee and pretrial detainee.

/ / /

29. From February 7 through 11, 2019, Plaintiff had serious medical needs arising from the detox and withdrawal symptoms described herein.  These symptoms were *objectively* serious, meaning, in this instance, that any reasonable adult would know the severity of these symptoms merely by seeing, hearing, and/or smelling Plaintiff during the five days that he was forced to detox and withdraw from alcohol and heroin at the border. Defendants were, moreover, *subjectively* aware of Plaintiff's serious medical needs given Plaintiff's repeated requests for medical care to treat his detox and withdrawal symptoms.

30. Despite the objective seriousness of his medical needs, and Defendants' subjective awareness of the same, Defendants failed to provide the medical care required to treat Plaintiffs' serious medical needs while Plaintiff was in the custody, and under the supervision, of Defendants.

31. As a direct and foreseeable result of Defendants' deliberate indifference to Plaintiff's serious medical needs, Plaintiff suffered physical injury, pain and suffering, and emotional distress.  Plaintiff thus seeks monetary damages to compensate for these injuries in an amount to be determined at trial.

32. Further, given the intentional and reckless manner in which Defendants were deliberately indifferent to Plaintiff's serious medical needs, Plaintiff also seeks punitive damages against each of Defendants according to the degree to which each was deliberately indifferent to Plaintiffs' serious medical needs, in an amount to be determined at trial.

## PRAYER FOR RELIEF

33. Based on the foregoing allegations and cause of action, Plaintiff hereby demands:

    a. that judgment be rendered in favor of Plaintiff and against Defendants on the cause of action asserted herein;

    b. compensatory damages in an amount to be determined at trial;

    c. punitive damages against each of Defendants in an amount sufficient to punish the conduct giving rise to this suit and to deter such conduct in the

future; and

d. any and all other relief in law or equity to which Plaintiff may be entitled and which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

34. Plaintiff demands, under the Seventh Amendment, a trial by jury as to the cause of action asserted herein.

Dated:  April 1, 2019                         SINGLETON LAW FIRM, APC

By:    *s/Brody McBride*

Brody A. McBride, Esq.

Attorneys for Marc-Oliver Lewis

COMPLAINT                                         7